# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

WANDA MARTIN                                                                PLAINTIFF

V.                    NO. 4:18CV00865 KGB-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]                 DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Wanda Martin ("Martin"), applied for disability benefits on September 9, 2013, alleging disability beginning on October 11, 2008.[2] (Tr. at 300). After conducting a hearing, an Administrative Law Judge ("ALJ") denied her

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Martin subsequently amended her alleged onset date to April 30, 2013. (Tr. at 15).

application on November 13, 2015. (Tr. at 312). The ALJ found that Martin was capable of performing work at all exertional levels, with no nonexertional impairments. (Tr. 306). After considering Martin's request for review of the hearing decision, the Appeals Council remanded the case for another hearing. (Tr. at 318-322). The Appeals Council directed a second ALJ to: (1) obtain additional evidence regarding Martin's mental health problems; (2) give further consideration to Martin's maximum residual functional capacity; and (3) to obtain supplemental evidence from a Vocational Expert ("VE"), if necessary. *Id*.

The second ALJ held a hearing on July 17, 2017. (Tr. at 15). On December 13, 2017, he issued a decision denying Martin's application for disability benefits. (Tr. at 30). The Appeals Council denied Martin's request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Martin has filed a Complaint seeking judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. **The Commissioner's Decision:**

The ALJ found that Martin had not engaged in substantial gainful activity since her amended disability onset date of April 30, 2013.[3] (Tr. at 18). At Step Two,

---

[3] Martin worked during part of the relevant time-period, but her work activity did not constitute substantial gainful activity. (Tr. at 18).

the ALJ found that Martin has the following severe impairments: hypothyroidism; hypertension; major depressive disorder; generalized anxiety disorder; and personality disorder. *Id.*

After finding that Martin's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Martin had the residual functional capacity ("RFC") to perform the full range of medium work, except that the work must be unskilled, with simple, routine, and repetitive tasks, with only incidental interpersonal contact, and the supervision required must be simple, direct, and concrete. (Tr. at 21).

Based on Martin's RFC and Vocational Expert ("VE") testimony (via interrogatory), the ALJ concluded that Martin was unable to perform any of her past relevant work. (Tr. at 28, 635-644). However, relying upon testimony from the VE, the ALJ concluded that, based on Martin's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a kitchen helper and a food prep worker. (Tr. at 29). Thus, the ALJ held that Martin was not disabled. *Id.*

### III. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Martin's Arguments on Appeal

Martin contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did *not*: (1) consider her impairments in combination; (2) properly evaluate her credibility; and (3) fully incorporate her

4

limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

As an initial matter, the Court notes that Martin did not cite any facts in the record to support her first two arguments. *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) (points not meaningfully argued in an opening brief are waived). Nonetheless, the Court will consider all of Martin's arguments.

Martin's physical impairments were mild and responded to treatment. She said at the hearing that her hypothyroidism was better. (Tr. at 194-195). She was not always compliant with taking her blood pressure medication. (Tr. at 658, 994). She also admitted that she had only sought treatment for carpal tunnel syndrome one month prior to the hearing, and that she should have seen a doctor earlier. (Tr. at 197-99). At the time of the ALJ's decision, there were no records of nerve conduction studies confirming carpal tunnel syndrome. (Tr. at 18). Finally, no doctor placed any restriction on Martin related to her physical impairments.

The Disability Determination Services physicians reviewed the records in 2014 and found that any physical impairments were non-severe. (Tr. at 246-267). In 2014, Martin also underwent a physical consultative examination. The examining physician found no restrictions on her functional capacity. (Tr. at 732-736). Nothing in the record suggested that a follow-up examination was required.

As for mental health, it is clear that Martin suffered depression and anxiety that was often severe. Treatment records from 2013-2015 showed that she was very upset and overwhelmed by her two adult children's diagnoses of schizophrenia. (Tr. at 648-658, 954-957, 967-973). Martin's son was in and out of treatment, and, sometimes, in and out of jail. Martin lived on his disability check. *Id*. Documents from Martin's mental health providers indicate that her own health was compromised by her children's problems. (Tr. at 788-802, 836-898). They also noted that when her children were in regular psychiatric treatment, Martin's mental health issues resolved for the most part. *Id*. In 2013, Martin said she wanted to try to work. (Tr. at 816). She was feeling better in mid-2013, and was trying to be more involved in her church. Nevertheless, she claimed that she had a "nervous breakdown," due to worrying about her children. (Tr. at 648-664).

In 2014, a consultative mental health examiner found that Martin could handle money, do chores, cook, and use her cell phone. (Tr. at 740). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The examiner said that Martin was sincere, cooperative, and gave good effort on all tasks. *Id.* He found that she could communicate effectively but would have moderate limitations in ability to tolerate work demands, persist with difficult tasks, sustain attentions, and concentrate. *Id.* The DDS reviewing doctors found mild-to-

6

moderate limitations on mental functional abilities and limited Martin to unskilled work. (Tr. at 252, 292). The consultative examiner's opinion and those of the DDS experts support the ALJ's limitation of Martin to unskilled work.[4]

Throughout the relevant time-period, Martin's therapists noted non-compliance with treatment and failure to keep appointments. (Tr. at 50, 90, 940, 950, 986, 992-994). In August 2015, Martin's therapist said she was difficult to reach and often canceled appointments, a pattern that was evident for the past six months. (Tr. at 958-959). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

Martin said that she could not afford medication, even at the price of $4.00 per prescription. (Tr. at 90, 99, 147, 980). She still wasn't always taking her medication when her provider referred her to a no cost pharmacy. (Tr. at 90, 195). The Court notes that Martin smoked every day throughout the relevant time-period (Tr. at 91, 133, 832), and this undermines her claim she could not afford even $4.00 medication. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999)(although claimant claimed he could not afford medication, there was no evidence to suggest

---

[4] The first ALJ placed no mental restrictions on Martin's ability to work. The ALJ in this case applied the most limiting restriction of only unskilled work. He clearly gave more consideration to the mental health impairments than the first ALJ, in keeping with what the Appeals Council directed him to do.

that he sought any treatment offered to indigents or chose to forgo smoking to help finance medication).

When Martin's children were having trouble, she became depressed, anxious, overwhelmed, suicidal, and heard voices. (Tr. at 41-56, 970-976). She was hospitalized briefly in 2016 for suicidal ideation. (Tr. at 41-56, 206-207, 861-898, 977-978). At intake, she admitted she had not seen her psychiatrist for three months. (Tr. at 50). She was feeling better upon discharge. (Tr. at 55). When Martin was able to get her son placed in a psychiatric facility in Atlanta, she was "visibly excited about her goals." (Tr. at 883). She said that treatment was helping her, as was church attendance, walking, relaxation exercises, and using her computer. (Tr. at 117, 788-798, 806, 820, 897). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). Martin was working part-time doing data entry in 2017. (Tr. at 93, 198-200). An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

On November 20, 2015, Dr. Ron Wauters, a psychiatrist, observed that Martin had normal cognitive function and logical and organized executive function. (Tr. at 1005). According to Dr. Wauters, Martin had normal thought process and no suicidal ideation. *Id*. Normal examination findings are not indicative of disabling conditions.

*Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). She was depressed and anxious, but her speech, appearance, and behavior was normal. *Id.* Martin told Dr. Wauters that she could not afford psychiatric medications. *Id.*

Dr. Wauters and Ms. Melanie Curtis, a PA-C, authored a letter dated June 22, 2017, stating that Martin had severe depression and anxiety, trouble sleeping, cognitive problems, and suicidal thoughts. (Tr. at 976). They said that she would have problems keeping a job due to psychomotor slowing. *Id.* However, at the time of the ALJ's decision, there were records from only one appointment with Dr. Wauters (although, in a 4-page record with very little detail, Dr. Wauters was listed as the treating psychiatrist for Martin's 2016 hospital stay). (Tr. at 931-934, 1005).

The ALJ pointed out the inconsistencies between Dr. Wauters's notes (showing fairly normal cognitive functioning) and his letter stating that Martin was unemployable. (Tr. at 26). He considered Martin's infrequent treatment with Dr. Wauters, along with the balance of the opinion evidence, and properly assigned Dr. Wauters's letter little weight. *Id.*

Martin makes passing reference to the ALJ's failure to develop the record. At the hearing, Martin's attorney told the ALJ that there were outstanding medical records from Dr. Wauters and Ms. Curtis, which would substantiate their 2017 letter. (Tr. at 208-218). She told the ALJ that these records would show treatment from Dr.

9

Wauters and Ms. Curtis indicating that Martin was disabled. The ALJ said that because of the sparse evidence of recent mental health treatment, it was very important that he receive those records, to decide if he should order another consultative mental examination. *Id*. Martin's attorney said he would work "double time" to get the records into evidence. (Tr. at 218). The ALJ left the record open for 40 days, through August 2017. *Id*.

The ALJ did not issue his unfavorable decision until December 2017, five months later, and still, Martin's attorney had not submitted any more records from Dr. Wauters or Ms. Curtis. After the decision, Martin's attorney sent to the Appeals Council a plethora of records showing treatment with Dr. Wauters and Ms. Curtis from 2015 through 2017. (Tr. at 39-155). The Appeals Council declined to make that evidence part of the record because it would not "change the outcome of the decision." (Tr. at 2).

Martin has the burden of proving her disability, and the ALJ was not obligated to fulfill the duties of her attorney. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). Martin did not timely supplement the medical record as the ALJ instructed her to. The ALJ cannot be faulted for Martin's attorney's failure to provide the additional medical records he promised he would provide.

Finally, when the medical records from Dr. Wauters and Ms. Curtis were

belatedly provided, they were submitted directly to the Appeals Council. Importantly, these "new" medical records painted the *same picture* as the medical records that were available to the ALJ: Martin had periods of depression and anxiety due to exacerbations from external stress, but by the end of the relevant time-period, she was feeling better and was more hopeful; "she was learning to work through depression;" she denied suicidal ideations; her medications were working; and she was engaging in church activities. (Tr. at 60-68, 120, 790-793, 964-967, 985-988). Martin worked in 2017, and testified that she had to stop due to poor circulation and soreness in her right hand, not issues related to her mental health. (Tr. at 196-197).

The ALJ discussed all of the credible mental and physical impairments in his opinion, even those he did not rule to be severe. A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Subjective complaints alone, without credible supporting medical evidence, are not sufficient to establish a severe impairment. *See Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006). The ALJ's decision was thorough, cited to the record, and showed that he considered the evidence in the record as a whole in evaluating Martin's impairments.

Martin claims that the ALJ did not properly evaluate her credibility. She suggests the ALJ erred by not mentioning *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). The Eighth Circuit has held, however, that an ALJ is not required to cite *Polaski* or all of the *Polaski* factors in order to properly evaluate a claimant's credibility. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. In evaluating a claimant's "subjective complaints," SSR 16-3p requires an ALJ to consider a claimant's: 1) prior work record; 2) the claimant's daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; 5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; and 6) any other factors concerning the claimant's functional capacity, limitations, and restrictions due to pain or other symptoms. As the court noted in *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017), those are the same *Polaski* factors that district courts were required to consider before the new rule became effective.

In evaluating Martin's subjective complaints, the ALJ considered the factors

listed in SSR 16-3p and cited the ones relevant to discount Martin's subjective complaints: her noncompliance with treatment; her ability to perform daily activities; her conservative treatment; and the inconsistencies between Dr. Wauters's letter and his own treatment notes. (Tr. at 22-27). *See Burns v. Sullivan*, 888 F. 2d 1218, 1220 (8th Cir. 1989)(where the evidence as a whole demonstrates inconsistencies, subjective complaints may be discounted).

The ALJ also considered the fact that Martin had asked her medical providers, on more than one occasion, to write letters stating that she could not work so she could obtain disability benefits. (Tr. at 69, 187-191, 885, 957, 992). She said she had no income for seven years (although she worked some over that period); she lived off of her son's disability check; and she could not afford medications. All of those statements suggested that lack of money drove her to seek disability benefits. None of this conduct by Martin enhanced her credibility.

Finally, Martin's RFC argument also fails. A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his

impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The crux of this case is Martin's mental impairments. The ALJ limited Martin to unskilled work, which properly accounted for all of her mental impairments that were supported by the evidence.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Martin was not disabled. The ALJ properly considered Martin's impairments in combination, the record was fully developed, the ALJ's credibility analysis was thorough, and the RFC properly incorporated Martin's limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 8th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE